## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**COURTYARDS AT THE WOODLANDS
CONDOMINIUM ASSOCIATION,**

|  |  |
|---|---|
| **Plaintiff,** | **Case No. 1:18-cv-03970** |
| **QBE INSURANCE CORPORATION,** | **The Honorable Andrea R. Wood** |
| **Defendant.** | **ANSWER AND AFFIRMATIVE DEFENSES** |

Defendant, QBE INSURANCE CORPORATION ("QBE"), by its attorneys, LEWIS BRISBOIS BISGAARD & SMITH. LLP, answers the Complaint of Plaintiff COURTYARDS AT WOODLANDS CONDOMINIUM ASSOCIATION ("COURTYARDS") as follows:

### ANSWER TO COUNT I
### (BREACH OF CONTRACT)

1.      At all times herein, Courtyards at the Woodlands Condominium Association ("Woodlands" or "Plaintiff"), was and is a not-for-profit corporation operating a condominium association consisting of forty-seven (47) buildings located at or about 2-120, 162-168, 172, 174, 180, 182, 186-200, 204, 206, 210-224, 228, 230, 236-264, (even), 3-25, 29-31, 35-49, 61-83, 87-89, 93-99, 111-115, 119-121, 127, 129, 135, 137, 141-147, 151, 153, 159, 161, 165, 167-171, 175, 177, 181-187, 191, 193, 197-201, 207-211, 217, 221-243, 153-267, 271, 273, 277-283, 287, 289, 293-299, 303, 305, 309-323, 327, 329, 335, 337, 343, 345, 349-371 (odd) Willow Parkway, 300, 322, 372, 394, 414-420 (even) 301-315, 365-371, 401-415 (odd) Satinwood Terrace, 317-361, Satinwood Court South; 324-330, 334, 336, 340-346, 350, 352, 356-370 (even) Satinwood Court North; 460, 466, 468, 472-494 (even), 463-469, 473, 475, 479-501 (odd) Banyan Tree Lane; 2160-2166 (even), 2170-2176 (even) Brandynwyn Lane; 2304, 2306, 2310-2340 (even), 2344, 2346, 2352, 2354, 2358-2364 (even) Magnolia Court East, 2500-2530, 2534, 2536, 2540-2546 (even), 2509-2515, 2519, 2521, 2525-2547 (odd) Live Oak Lane, Buffalo Grove, Lake County, IL 60089 ("the Insured Property").

**ANSWER:**      QBE denies that it has knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1 of the Complaint.

2.      At all times herein, Defendant QBE Insurance Corporation ("QBE) was and is a New York corporation authorized to do business in the State of Illinois and is engaged in the business of issuing property insurance policies in the State of Illinois.

**ANSWER:** QBE admits that it was authorized to issue the subject policy in the State of Illinois. QBE denies all remaining allegations contained in paragraph 2 of the Complaint and otherwise refer all questions and interpretations of law to the Honorable Court.

3. QBE issued to Woodlands a Condominium Insurance Policy, Policy Number CAU312662-2, with effective dates of January 15, 2013 to January 15, 2016 (the "Policy"). A copy of the Policy is attached as Exhibit 1.

**ANSWER:** QBE admits that it issued Policy No. CAU312662-2, effective from January 15, 2013 to January 15, 2016, (the "Policy") to COURTYARDS. QBE denies that a copy of the Policy was attached to the Complaint it received and this Honorable Court is referred to a true and accurate copy of the Policy as to its terms and conditions.

4. Pursuant to the terms of the Policy, QBE agreed to pay for immediate and direct physical loss or damage to "covered property" [at the Insured Property] unless otherwise excluded.

**ANSWER:** QBE denies each and every allegation contained in paragraph 4 of the Complaint as reflecting conclusions of law and this Honorable Court is referred to a true and accurate copy of the Policy as to its terms and conditions.

5. Coverage for the Insured Property was extended on a guarantee replacement cost basis including coverage for ordinance and law and increased cost of construction.

**ANSWER:** QBE denies each and every allegation contained in paragraph 5 of the Complaint as reflecting conclusions of law and this Honorable Court is referred to a true and accurate copy of the Policy as to its terms and conditions.

6. On or about April 12, 2014, while the Policy was in full force and effect, the Insured Property suffered direct physical loss and damage caused by hail, which is not limited or excluded under the Policy.

**ANSWER:** QBE denies each and every allegation contained in paragraph 6 of the Complaint.

7. Woodlands duly submitted a claim, claim no. 92919 to QBE under the Policy for the losses to the Insured Property.

**ANSWER:**     QBE admits that a claim was submitted under the Policy and adjusted under claim No. 92919.  QBE denies all remaining allegations contained in paragraph 7 of the Complaint.

8.     Woodlands has substantially performed all conditions required by the Policy to be performed by it, including giving QBE timely notice of the losses, cooperating with QBE's investigation, and timely filing suit against QBE.

**ANSWER:**     QBE denies each and every allegation contained in paragraph 8 of the Complaint for the reasons stated in its affirmative defenses hereto.

9.     As a result, it is QBE's duty to pay Woodlands for all the losses and damages sustained to covered property at the Insured Property.

**ANSWER:**     QBE denies each and every allegation contained in paragraph 9 of the Complaint.

10.     Though requested to do so, to date QBE has failed, refused and continues to fail and refuse to pay Woodlands for the covered losses and damage to the Insured Property.

**ANSWER:**     QBE admits that coverage was properly denied and that no payment was issued with respect to COURTYARDS' claim.  QBE denies all remaining allegations contained in paragraph 10 of the Complaint.

11.     This breach of the insurance contract was and is the direct and proximate cause of loss to the Plaintiff in an amount in excess of $30,000.

**ANSWER:**     QBE denies each and every allegation contained in paragraph 11 of the Complaint.

12.     This is an action based on a "written instrument" within the meaning of the Illinois Interest Act and, therefore, Woodlands is entitled to prejudgment interest.

**ANSWER:**     QBE denies each and every allegation contained in paragraph 12 of the Complaint as reflecting conclusions of law

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.     QBE issued Policy No. CAU312662-2, effective from January 15, 2013 to January 15, 2016, (the "Policy") to COURTYARDS.  The Policy contains the following

potentially pertinent provisions:

### 1. PROPERTY DIRECT COVERAGES SECTION

**We will pay for direct physical loss of or damage to "covered property" caused by or resulting from any COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS. Coverage is provided only when a limit of insurance is shown in the "Declarations." Coverage is provided only when a limit of insurance is shown in the "Declarations."**

**Unless otherwise specified, "covered property" must be located within the "coverage territory."**

**Unless otherwise specified in this section, all EXCLUSIONS under III.B. EXCLUSIONS apply.**

**Coverage is also provided for "covered property" which is not damaged but which must be removed and replaced in order to repair "covered property" which is damaged by a COVERED CAUSE OF LOSS under III.A. COVERED CAUSES OF LOSS.**

#### A. GENERAL COMMUNITY PROPERTY

Unless otherwise specified, coverage is provided for the following property if it is on or within 1,000 feet of the "premises." However, the following property does not include any property which is covered, or would be covered except for the exhaustion of the applicable limits of insurance, under I.B. SPECIAL COMMUNITY PROPERTY.

##### 1. BUILDINGS AND STRUCTURES

Coverage is provided for:

###### a. BUILDINGS

Buildings that are described in the "Declarations" and used in whole or in part as:

residences, clubhouses, meeting centers, boat houses, garages, sewage treatment facilities, and building which house heating and air conditioning plants.

###### b. STRUCTURES

Structures not described in the "Declarations" and used in whole as:

cabanas, courts for hand ball, courts for racquet sports, pool houses, gate houses, storage sheds, shelters, mailboxes, gazebos, pump houses, fences, walkways, roadways, other paved surfaces, recreation fixtures, outdoor fixtures, outdoor "swimming pools," flagpoles, light poles, fountains, outside statues and freestanding walls, other than retaining walls.

Buildings and structures not specified in a. and b. above are covered only when specifically described in the "Declarations."

Buildings and structures include: pipes, wires, conduits, ducts, chutes, flues, and utilities; heating, ventilating and cooling systems, sprinkler, fire protection and security systems; permanently installed building machinery and equipment and other mechanical elements, all whether above or below ground; balconies, indoor or rooftop "swimming pools"; porches; decks; patios; and other property not within "units."

Coverage includes the following property not within "units": additions, alterations and structural repairs, whether or not complete; finishes, coatings and coverings of walls, floors and ceilings; and permanently installed appliances and fixtures.

\* \* \*

III.    PROPERTY CAUSES OF LOSS, EXCLUSIONS AND LIMITATIONS SECTION

A. **COVERED CAUSES OF LOSS**

Covered Causes of Loss includes IV. ADDITIONAL COVERED CAUSES OF LOSS SECTION and means immediate and direct physical loss or damage to "covered property" unless the loss is excluded under III.B. EXCLUSIONS.

B. **EXCLUSIONS**

1. Except as otherwise specified, we will not pay for loss or damage which would not have occurred in the absence of one or more of the following excluded events regardless of: (a) the cause of the excluded event; (b) other causes of the loss: (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

   a. **ORDINANCE OR LAW**

   The enforcement of any ordinance or law which:

   (1) Regulates the construction, use or repair of any property; or

   (2) Requires the tearing down of any property, including the cost of removing its debris.

   **Except as provided under II.G. ORDINANCE OR LAW COVERAGE.**

   \* \* \*

2. We will not pay for loss or damage caused by or resulting from any of the following:

   a. **ATMOSPHERE AND ENVIRONMENT**

   (1) The following causes of loss to personal property, structural glass and signs caused by:

   (a) Dampness or dryness of the atmosphere; or

(b)    Changes    in    or extremes    of temperature.

However, if loss or damage by the "Specified Causes of Loss" or structural glass breakage results, we will pay for that resulting loss or damage.

(2)    Smog;

(3)    Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(4)    Falling objects, rain, snow, ice or sleet to personal property in the open;

(5)    Smoke, vapor or gas from agricultural smudging or industrial operations;

(6)    Weather conditions. Except that this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in III.B.1. to produce loss or damage. However, if a COVERED CAUSE OF LOSS results, we will pay for the loss or damage caused by that COVERED CAUSE OF LOSS.

**b.    MATERIAL FACTORS**

(1)    Wear and tear;

(2)    Rust, corrosion, decay, contamination or deterioration;

(3)    Latent defect, innate or inherent vice or any quality in the property that causes it to damage or destroy itself;

(4)    Settling, cracking, bulging, shrinking or expanding;

(5)    Based upon or arising out of the existence of, exposure to or required removal or abatement of rot, mold, or mildew or other fungi, regardless of whether such rot, mold, or mildew or other fungi ensues from any cause or condition including, but not limited to, any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid or any damage related thereto.

However, if loss or damage to covered pressure, mechanical or electrical equipment results, we will pay for that resulting loss or damage to such equipment.

\* \* \*

**d.**    **"COLLAPSE"**

"Collapse."

However, if loss or damage by another COVERED CAUSE OF LOSS results at the "premises," we will pay for the resulting loss or damage.

**Except as provided under IV.A. "COLLAPSE" COVERAGE.**

\* \* \*

**3.**    **ACTS OR OMISSIONS**

We will not pay for loss or damage caused by or resulting from any of the following:

a.    Acts, decisions, errors or omissions, including the failure to act or decide, of any person, group, organization or governmental body;

b.  Faulty, inadequate, defective, or negligent:

(1)  Planning, zoning, development, surveying, siting;

(2)  Design, testing, specifications, workmanship, repair, construction, renovation, remodeling, grading, earth compaction;

(3)  Materials used in repair, construction, renovation or remodeling; or

(4)  Maintenance. However, if loss or damage to covered pressure, mechanical or electrical equipment results, we will pay for that resulting loss or damage to covered pressure, mechanical or electrical equipment.

* * *

However, if a COVERED CAUSE OF LOSS results, we will pay for the loss or damage caused by that COVERED CAUSE OF LOSS.

C.  **LIMITATIONS**

We will not pay for loss of or damage to property, as described and limited below. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited below.

2.  To the interior of any building or structure caused by or resulting from ice, rain, snow, sleet, water, sand or dust, all whether wind driven or not, unless:

a.  The loss or damage is caused by or results from thawing or melting of snow,

sleet or ice on the building or structure; or

b.    The building or structure first sustains damage by a COVERED CAUSE OF LOSS to an exterior surface through which the ice, rain, snow, sleet, water, ice sand or dust enters.

The criteria set forth in the definition of "collapse" does not limit the coverage otherwise provided under paragraph III.A. COVERED CAUSES OF LOSS for the causes of loss listed in 1.a., 1.d., and 1.e. above.

\* \* \*

2.    PROPERTY NOT COVERED "COLLAPSE"

a.    The following types of property are not covered:

(1)    Outdoor: satellite dishes, radio, television and other antennas, including wiring;

(2)    Masts or towers;

(3)    Awnings;

(4)    Gutters and downspouts;

(5)    Yard fixtures;

(6)    Outdoor "swimming pools";

(7)    Fences;

(8)    Piers, wharves or docks;

(9)    Beach or diving platforms or appurtenances;

(10)    Retaining walls; or

(11)    Walks, roadways or other paved surfaces.

b.    Unless the loss or damage is:

       (1)    Caused by "Specified Causes of Loss"; or

       (2)    A direct result of the "collapse" of a building or structure caused by a COVERED CAUSE OF LOSS.

\* \* \*

## VI. PROPERTY CONDITIONS SECTION

The Property Coverage Part is subject to the following conditions.

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Property Coverage Part is void in any case of fraud by you as it relates to this Property Coverage Part at any time. Also, this Property Coverage Part is void if you, or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. The Property Coverage Part;

2. The "covered property";

3. Your interest in the "covered property"; or

4. A claim under this Property Coverage Part.

Under this condition 'you' also means any officer, director, or trustee when acting on your behalf.

\* \* \*

### I. INSURED'S DUTIES IN THE EVENT OF LOSS OR DAMAGE

Failure to perform these duties will impair your rights under this Property Coverage Part or could result in denial of coverage.

1. Notify us in writing of any clean up or removal expenses for debris and "pollutants" within 180 days of the earlier of the following:

    a.    The date of the direct physical loss or damage which creates the debris or pollution; or

    b.    The expiration date of this policy.

\* \* \*

4.  Give us prompt notice of the loss or damage and include a description of the property involved.

\* \* \*

7.  As soon as possible, give us a description of how, when and where the loss or damage occurred.

8.  Take all reasonable steps to protect the "covered property" from further damage. If feasible, set the damaged property aside and in the best possible order for examination.

9.  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

10. As often as may reasonably be required, permit us to inspect the property and records proving the loss or damage. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis. Permit us to make copies from your books and records.

11. Permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

12. Send us a signed, sworn statement of loss containing the information we request to investigate or settle the claim. You must do this within 60 days.

13. Cooperate with us in the investigation or settlement of the claim.

## J.  LIMITS OF INSURANCE

1.  Regardless of the number of years this insurance remains in force or the number of premiums paid, no limit of insurance accumulates from policy term to policy term.

\* \* \*

U.  **"POLICY PERIOD"**

Under this Property Coverage Part we provide coverage for this loss or damage during the "policy period."

\* \* \*

XXVIII.  **DEFINITIONS SECTION**

\* \* \*

11.  "Collapse" (PROPERTY) means an abrupt falling down, caving in or flattening of a building, structure or of any part of a building or structure with the result that the building, structure or the collapsed part of either cannot be occupied for its intended purpose. However:

a.  A building, structure or any part of either that is in danger of falling down or caving in is not considered to be in a state of collapse. This provision applies even if the building has been:

(1)  Declared by civil authority or by a person technically qualified to do so to be in an imminent state of collapse;

(2)  Condemned for occupancy for its intended purpose, or,

b.  A part of a building or structure that is standing is not considered to be in a state of collapse even if it has separated from another part of the building or structure;

c.  None of the following is considered to be in a state of "collapse" even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion:

(1)  A building, structure or part of either that is standing; or

(2)  Personal property.

\* \* \*

18.  "Covered Property" (PROPERTY) means property described in I. PROPERTY DIRECT

COVERAGES SECTION for which a limit of insurance is shown in the "Declarations."

\* \* \*

73. "Specified Causes of Loss" (PROPERTY) means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; "volcanic action"; falling objects; weight of snow, ice or sleet; "water damage."

\* \* \*

92. "Water damage" (PROPERTY) means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**Illinois Changes - Amendatory Endorsement**

This endorsement modifies insurance provided under the following:

CONDOMINIUM POLICY
COOPERATIVE APARTMENT POLICY
HOMEOWNERS ASSOCIATION POLICY
OFFICE CONDOMINIUM POLIYC

**A.      VI. PROPERTY CONDITIONS SECTION is amended as follows:**

**(i)      The following is added to D. LEGAL ACTION AGAINST US, 2.:**

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

\* \* \*

2.      COURTYYARDS failed to provide timely and proper notice and sworn proof of

loss for plaintiff's claim for the damages alleged in the Complaint in accordance with the Policy

and applicable law, and COURTYARDS failed to supply requested documents and cooperate with QBE's investigation, thereby causing prejudice to this answering defendant.

## SECOND AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Second Affirmative Defense as though fully set herein.

2.      Out of an abundance of caution, and without in any way assuming any burden of proof imposed on COURTYARDS by Illinois law, QBE asserts that the Policy does not provide coverage to the extent the damages at issue did not constitute a fortuitous loss to covered property.

## THIRD AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Third Affirmative Defense as though fully set herein.

2.      Courtyards did not exercise due diligence to repair or replace the property damaged or destroyed.

## FOURTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Fourth Affirmative Defense as though fully set herein.

2.      No coverage is owed to the extent COURTYARDS seeks recovery of loss or damage to "Property Not Covered" under the Policy.

## FIFTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Fifth Affirmative Defense as though fully set herein.

2.      The Policy does not provide coverage to the extent that the loss or damage at issue falls within any exclusions or limitations set forth in the policy.

## SIXTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Sixth Affirmative Defense as though fully set herein.

2.      COURTYARDS' claims as set out in the Complaint are barred, in whole or in part, to the extent that COURTYARDS, and/or others, have lost, damaged, modified, destroyed otherwise spoiled any relevant evidence pertaining to its claims or to the loss or damage that is the subject of this Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Seventh Affirmative Defense as though fully set herein.

2.      Out of an abundance of caution, and without in any way assuming any burden of proof imposed on COURTYARDS by Illinois law, QBE asserts that the damages which form the basis of the claim for insurance proceeds are not insured by QBE because the alleged loss damages may have been sustained, in whole or in part, outside of the policy period of the Policy.

## EIGHTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Eighth Affirmative Defense as though fully set herein.

2.      Upon information and belief, COURTYARDS failed to take reasonable steps to avoid, minimize or mitigate its damages or liabilities arising in connect with the claim(s).  By

reason thereof, recovery by COURTYARDS under the QBE Policy, if any, must be reduced accordingly.

## NINTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Ninth Affirmative Defense as though fully set herein.

2.      QBE hereby incorporates by reference all coverage defenses set forth in its prior coverage position letters sent to COURTYARDS.

## TENTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Tenth Affirmative Defense as though fully set herein.

2.      The loss and damage that is the subject of COURTYARDS' Complaint resulted, in whole or in part, from atmospheric and environmental conditions excluded by Section III.B(2)(a) of the Property Coverage Part of the Policy, quoted in paragraph 1 hereto.

## ELEVENTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Eleventh Affirmative Defense as though fully set herein.

2.      The loss and damage that is the subject of COURTYARDS' Complaint resulted, in whole or in part, from one of the Material Factors set forth in Section III.B(2)(b)(1-5) of the Property Coverage Part of the Policy, quoted in paragraph 1 hereto.

## TWELFTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Twelfth Affirmative Defense as though fully set herein.

2.      The loss and damage that is the subject of COURTYARDS' Complaint resulted, in whole or in part, from one of the Acts or Omissions set forth in Section III.B(3)(a), (b)(1-4) of the Property Coverage Part of the Policy, quoted in paragraph 1 hereto.

## THIRTEENTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Thirteenth Affirmative Defense as though fully set herein.

2.      There is no coverage all or part of the loss and damage that is the subject of COURTYARDS' Complaint to the extent that that loss and damage subject to the limitation contained in Section III.C(2) of the Property Coverage Part of the Policy, quoted in paragraph 1 hereto.

## FOURTEENTH AFFIRMATIVE DEFENSE

1.      QBE repeats and realleges the allegations contain in paragraph 1 of its First Affirmative Defense as paragraph 1 of its Fourteenth Affirmative Defense as though fully set herein.

2.      To the extent that the loss and damage that are the subject of the Complaint were also the subject of claims prior to the insurance claim that is the subject of the Complaint, and were not thereafter repaired, QBE is not liable for that loss or damage.

**WHEREFORE,** defendant, QBE INSURANCE CORPORATION demands judgment dismissing the Complaint, together with the costs, disbursements and counsel fees incurred in the defense of this action.

## **JURY DEMAND**

Answering defendant hereby demands a trial by jury on all of the issues.

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    /s/ Zacarias Chacon_____
          Zacarias Chacon
          Attorneys for Defendant
          Attorney for QBE INSURANCE CORPORATION
          550 West Adams Street, Suite 300
          Chicago, Illinois 60661
          (312) 463-3348 Ext. 3123

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2018, I served a true and correct copy of the foregoing ANSWER AND AFFIRMATIVE DEFENSE upon the following counsel by email and/or 1st Class United States Mail, postage prepaid:

> Scott Green
> The Law Offices of Scott Green
> 421 West Oakdale Avenue, #6
> Chicago, IL 60657

    /s/ Mary Fuentes         
Mary Fuentes
